# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMIEN M. SCHLAGER, | Civil No. 3:14-cv-1964 |
| Petitioner | (Judge Mariani) |
| v. | |
| BRIAN V. COLEMAN, et al., | |
| Respondents | |

## MEMORANDUM

Petitioner Damien Schlager ("Schlager") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of York County, Pennsylvania. (Doc. 1). Schlager subsequently filed an amended habeas petition. (Doc. 9). Respondents moved to dismiss the petition as untimely. (Doc. 15). The Court previously denied Respondents' motion to dismiss the petition as untimely, and found that there were factual issues relating to whether Schlager is entitled to equitable tolling of the statute of limitations. (Docs. 18, 19). The Court Ordered the parties to further develop the factual record regarding this issue. (Id.). Schlager acknowledges that his petition is untimely, but contends that equitable tolling should be applied as his assigned attorneys effectively abandoned him. (Doc. 23, p. 6). After consideration of the supplemental filings submitted by the parties in support of their respective positions on the equitable tolling issue, the Court will dismiss the habeas petition as untimely.

I.  **Background**

The facts of this case have been aptly summarized by the state court as follows:

[Schlager] was accused of murdering Christina Colon and her unborn child. It was alleged that [Schlager] killed Ms. Colon after she claimed to be pregnant with his child and refused to get an abortion. At [Schlager's] trial, the Commonwealth played a tape recording of a conversation between [Schlager] and Larry Harcum. The Court admitted the recording into evidence. Mr. Harcum testified on December 12, 2005 that he consented to being wired by the police with a disk recorder. The resulting tape recording of a conversation between Mr. Harcum and [Schlager] was played in court. In his testimony, Mr. Harcum identified voices on the tape as his and [Schlager's]. In that recording, [Schlager] admits to committing the murder; specifically, [Schlager], referring to Ms. Colon, said "I shot her and she fell right down onto the stones. But it, it blew, I shot her in the back of the head, it blew right out the front." [Schlager] was also recorded asking Mr. Harcum to dispose of Ms. Colon's body and giving Mr. Harcum specific directions to the location of the body. The recording also includes several statements made by [Schlager] indicating that Ms. Colon had told him that she was pregnant; for example, [Schlager] said, referring to Ms. Colon, "She over six months pregnant, that means she got pregnant in February."

The Commonwealth presented additional witnesses including several police officers involved either in the wire-tap operation and who interviewed [Schlager] before his arrest, an expert in forensic entomology who studied certain bugs found on the victim's body and testified as to the date of Ms. Colon's [death] within a reasonable degree of scientific certainty, and experts in forensic pathology, forensic anthropology and OB/GYN. Other testimony was presented, including that of David Killean, a manager assistant at Verizon Wireless who testified to the records of calls received or made by Ms. Colon's phone, and Melissa Bohin, a friend of Ms. Colon, who testified that Ms. Colon had called her child's father and that the number called belonged to [Schlager].

[Schlager] himself testified at trial. The Defense also presented the expert testimony of a forensic pathologist who could not say within a reasonable degree of medical certainty that Ms. Colon was pregnant at the time of her

death. Friends, family and other people [Schlager] has had relationships with also testified.

Commonwealth v. Schlager, 2013 WL 11254070, at *1 (Pa. Super. 2013) (citing trial court opinion, 7/5/12 at 2-3 (citations omitted)).

On December 15, 2005, following a jury trial, wherein Schlager was represented by Gerald Lord, Esquire, Schlager was found guilty of first degree murder and murder of an unborn child. Commonwealth v. Schlager, CP-67-CR-0004884-2004 (York County filed October 9, 2004). On February 22, 2006, Schlager was sentenced to consecutive life sentences on each criminal count. Id. He filed post-sentence motions, which were denied. Id.

On September 1, 2006, Schlager filed a timely notice of appeal with the Pennsylvania Superior Court. Commonwealth v. Schlager, 953 A.2d 606 (Pa. Super. 2008) (Table). On March 4, 2008, the judgment of sentence was affirmed in part, and vacated in part on the basis that the trial court imposed a monetary fine of $100,000 without having held a hearing to determine Schlager's ability to pay. Id. On June 5, 2008, Schlager filed a petition for allowance of appeal with the Pennsylvania Supreme Court. Commonwealth v. Schlager, 589 Pa. 788, 959 A.2d 929 (Pa. 2008) (Table). On October 17, 2008, the Pennsylvania Supreme Court denied the petition for allowance of appeal. Id. On January 15, 2009, Schlager filed a petition for writ of certiorari to the United States Supreme Court. On April 20, 2009, the United States Supreme Court denied the petition for writ of certiorari.

*Schlager v. Pennsylvania*, 556 U.S. 1194, 129 S.Ct. 2017 (2009). At this point, his judgment of sentence became final. *See* 42 PA. CONS. STAT. § 9545.

On November 10, 2009, Schlager filed a *pro se* petition for post conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. *Schlager*, CP-67-CR-0004884-2004. The PCRA court appointed T. Korey Leslie, Esquire, to represent Schlager. On June 25, 2012, the PCRA court denied the petition. (Doc. 1, p. 21). Schlager had until August 4, 2012 to file a timely appeal of the denial of his PCRA petition. On August 9, 2012, PCRA counsel filed a petition for leave to file an appeal *nunc pro tunc* with the Pennsylvania Superior Court. (Doc. 22-4, pp. 1-4, *Commonwealth v. Schlager*, 1597 MDA 2012 (Pa. Super. 2012)). On August 28, 2012, Schlager was granted allowance of appeal *nunc pro tunc*. (*Id.*). On September 5, 2012, Schlager filed a notice of appeal with the Pennsylvania Superior Court. (*Id.*). On October 22, 2013, the Pennsylvania Superior Court affirmed the denial of the PCRA petition. *Commonwealth v. Schlager*, 2013 WL 11254070 (Pa. Super. 2013). Schlager had thirty days from that date, or until November 21, 2013, to file a petition for allowance of appeal with the Pennsylvania Supreme Court. On November 22, 2013, PCRA counsel filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Doc. 9-1, pp. 65-68); *Commonwealth v. Schlager*, 619 MT 2013 (Pa. 2013). On November 25, 2013, the Pennsylvania Supreme Court administratively closed the temporary docket because the petition for allowance of

4

appeal was untimely by one day. (*Id.*).

On September 18, 2014, Schlager filed a *pro se* petition for leave to file a petition for allowance of appeal *nunc pro tunc*. *Commonwealth v. Schlager*, 141 MM 2014 (Pa. 2014). On November 3, 2014, the Pennsylvania Supreme Court denied the petition for leave to file a petition for allowance of appeal *nunc pro tunc*. *Id.*

On September 30, 2014, Schlager filed the instant federal habeas petition. (Doc. 1). On December 1, 2014, he filed an amended petition. (Doc. 9).

## II. Discussion

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

5

>    seeking such review;
>
>    . . .
>
>    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

Schlager was sentenced on February 22, 2006. His judgment of sentence became final on April 20, 2009, when the United States Supreme Court denied his petition for writ of certiorari. See 28 U.S.C. § 2244(d)(1)(A). The one-year period for the statute of limitations commenced running as of that date. Hence, the federal petition, which was filed on September 30, 2014, is patently untimely. However, the Court's analysis does not end here; consideration of both statutory and equitable tolling must be undertaken.

### A. Statutory Tolling

Section 2244(d)(2) tolls the one year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations began running on April 20, 2009 and, absent any tolling, would expire

on April 20, 2010. On November 10, 2009, after approximately 204 days of the one-year statute had elapsed, Schlager successfully tolled the statute of limitations when he filed his timely PCRA petition. See 28 U.S.C. § 2244(d)(2). The statute remained tolled until November 21, 2013, at the expiration of his time to file a petition for allowance of appeal with the Pennsylvania Supreme Court. The statute then began running again. The 161 days remaining in which to file his federal petition expired on or about May 2, 2014. Schlager's federal petition was filed on September 30, 2014, well after the expiration of the limitations period. Consequently, Schlager must establish that he is entitled to sufficient equitable tolling of the AEDPA's limitations period in order for his habeas petition to be considered timely filed.

### B. Equitable Tolling

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Pace v. Diguglielmo, 544 U.S. 408, 418

7

(2005).

With respect to the diligent pursuit of rights, a petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. *See Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. *See LaCava*, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, *see Jones*, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. *See Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

The Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes. *See Holland v. Florida*, 560 U.S. 631, 635-54, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). An "egregious error" includes instances where an attorney fails to file an appeal after an explicit request from the petitioner, "affirmatively deceives the petitioner about filing a direct appeal," or

"persistently neglects the petitioner's case." *Schlueter v. Varner*, 384 F.3d 69, 7677 (3d Cir. 2004). Applying this exacting standard, the Third Circuit has repeatedly found that in non-capital cases, attorney error does not constitute the "extraordinary circumstances" necessary for equitable tolling. *See, e.g., Schlueter*, 384 F.3d at 76 (holding that "[g]enerally ... attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation."); *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002) (holding that a petitioner's receipt of erroneous advice from counsel regarding the deadline for filing a federal habeas corpus petition did not warrant equitable tolling); *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (finding that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."). Generally, an attorney's delinquency is chargeable to a client and is not a basis for equitable tolling. *See Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 237 (3d Cir. 1999) (considering the timeliness of a complaint in a Title VII case).

Schlager contends that he is entitled to equitable tolling of the statute of limitations due to the ineffective assistance of two court-appointed attorneys. (Doc. 23). Schlager further asserts that he exercised due diligence under the circumstances in pursuing his claims.

A limitations period may be equitably tolled by a showing of ineffective assistance of

9

counsel, but the petitioner must show that counsel was indeed ineffective, see *United States v. Casiano*, 216 F. App'x 173, 175 (3d Cir. 2007) (deadline may be equitably tolled by a showing of ineffective assistance of counsel, but record that counsel was not ineffective can negate the contention), and that the ineffectiveness was an extraordinary circumstance. As stated, ineffective assistance of counsel has not generally been considered an extraordinary circumstance where the ineffectiveness was due to counsel's negligence or mistake. *See United States v. Martin*, 408 F.3d 1089, 1093-94 (8th Cir. 2005); *see also Johnson*, 314 F.3d at 163. Serious attorney misconduct, however, may warrant equitable tolling. *Nara*, 264 F.3d at 320 (noting that claims of attorney misconduct may provide a basis for equitable tolling).

First, Schlager claims that his direct appeal counsel did not promptly inform him when the United States Supreme Court denied his petition for writ of certiorari on April 20, 2009. (Doc. 23, pp. 2-3). Instead, he states that his direct appeal counsel informed him on July 13, 2009 of the April 20, 2009 United States Supreme Court decision denying his petition for writ of certiorari. (*Id.*). Thus, Schlager asserts that he is entitled to equitable tolling of approximately 86 days. (*Id.*). Based on the record, the Court finds that trial counsel's failure to promptly notify Schlager when the United States Supreme Court denied his petition for writ of certiorari does not constitute an "egregious error[]" amounting to an extraordinary circumstance for equitable tolling purposes. *See Holland*, 560 U.S. at 651-52.

On July 13, 2009, trial counsel informed Schlager that the United States Supreme Court denied his petition for writ of certiorari on April 20, 2009, and further advised him that he had 365 days to timely file a PCRA petition. (Doc. 23-1, p. 2). Schlager timely filed his PCRA petition on November 10, 2009. It appears that trial counsel was generally prompt and forthright in his communications with Schlager. There is no indication that trial counsel affirmatively misled Schlager, missed any filing deadlines, or failed to inform Schlager of crucial information. Consequently, equitable tolling is not justified with respect to the actions of trial counsel.

Second, Schlager claims that his PCRA counsel failed to timely file a notice of appeal from the Superior Court's decision affirming the denial of the PCRA petition, failed to promptly notify Schlager when the Pennsylvania Supreme Court dismissed the petition for allowance of appeal as untimely, and failed to file a *nunc pro tunc* appeal. (Doc. 23, pp. 3-5). The record reflects that PCRA counsel filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was dismissed as untimely by one day. (Doc. 9-1, pp. 65-68). The Court finds that PCRA counsel's filing of the notice of appeal one day late, failure to file an appeal *nunc pro tunc*, and his failure to promptly notify Schlager that the Pennsylvania Supreme Court dismissed the petition for allowance of appeal as untimely, do not constitute "egregious errors" amounting to extraordinary circumstances for equitable tolling purposes. *See Holland*, 560 U.S. at 651-52 ("We have previously held that a garden

variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling."). Regarding Schlager's claim that PCRA counsel failed to file an appeal *nunc pro tunc*, the record indicates that PCRA counsel did not file a petition for leave to file a petition for allowance of appeal *nunc pro tunc* based on his position that the underlying petition lacked merit. (Doc. 22-1, p. 1). The record further reflects that Schlager filed an unsuccessful *pro se* petition for leave to file an appeal *nunc pro tunc* with the Pennsylvania Supreme Court. (Doc. 9-1, pp. 60-62). In that petition, Schlager set forth the same claims as in the instant habeas petition regarding the actions of PCRA counsel, and requested that the Court allow him to proceed with his untimely appeal. (*Id.*). The Pennsylvania Supreme Court ultimately denied the petition for leave to file a petition for allowance of appeal *nunc pro tunc*. (Doc. 9-1, p. 59, *Commonwealth v. Schlager*, 141 MM 2014 (Pa. 2014)).

The record does not reflect that PCRA counsel affirmatively lied to Schlager, misled him, or told him incorrect deadlines. In fact, Schlager acknowledges that he had an effective working relationship with PCRA counsel, and his assistance was "outstanding." (Doc. 23-1, p. 32). Schlager has failed to show that PCRA counsel's behavior was more than mere negligence or mistake. Further, he has not alleged any serious attorney misconduct. *See, e.g., Barnes v. Harlow*, 2015 WL 1912613 (M.D. Pa. 2015) (the petitioner's reliance on his counsel's alleged erroneous advice is insufficient to trigger

equitable tolling).

Moreover, even if it can be found that PCRA counsel's ineffectiveness constituted an extraordinary circumstance, Schlager has failed to show that he was reasonably pursuing his rights diligently in attempting to file an appeal after the extraordinary circumstances began. On November 25, 2013, PCRA counsel informed Schlager that the Superior Court affirmed the denial of his PCRA petition on October 22, 2013, and that he filed an appeal with the Pennsylvania Supreme Court. Schlager suggests that he exercised due diligence, however he did not file his *pro se* petition for allowance of appeal *nunc pro tunc* with the Pennsylvania Supreme Court until September 2014, nearly one year after PCRA counsel informed him that the Superior Court affirmed the denial of his PCRA petition. Furthermore, Schlager did not file his habeas petition with this Court until September 2014. If Schlager was reasonably confused about whether any state court filings were pending, he should have protectively filed his habeas petition in federal court to preserve his AEDPA limitations period and ask the court to stay and abey the habeas proceedings until any state court remedies he thought he had were exhausted. *See Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009). As such, the Court finds that Schlager has not alleged facts that demonstrate reasonable diligence in bringing his claims in a habeas petition. Thus, since Schlager "has not shown enough to satisfy the reasonable diligence prong of the equitable tolling test, his claims are not subject to equitable tolling." *Almazan v. Commonwealth of Pa.*, 80

F.Supp.3d 602, 609 (E.D. Pa. 2015); see also *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012). Accordingly, the petition is time-barred and will be dismissed.

## III. Certificate of appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason could not disagree that the instant petition is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to the petition. Accordingly, a certificate of appealability will not issue.

## IV. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be dismissed as untimely. A separate Order will issue.

Dated: March 28, 2018

Robert D. Mariani
United States District Judge